# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GARY M. GRANGER; ELENA GRANGER,<br><br>        Plaintiffs,<br><br>    v.<br><br>LOWE'S HOME CENTERS, LLC;<br>SAMSUNG ELECTRONICS AMERICA,<br>INC.,<br><br>        Defendants. | Case No.  1:14-cv-01212-KJM-SKO<br><br>**ORDER ON DEFENDANT LOWE'S HOME CENTERS, LLC, MOTIONS FOR PROTECTIVE ORDER PRECLUDING DEPOSITIONS OF ITS CORPORATE EMPLOYEES, DISCLOSURE OF SETTLEMENT COMMUNICATIONS, AND DISCLOSURE OF CONFIDENTIAL POLICIES, PROCEDURES, AND TRADE SECRETS**<br><br>(Docs. 42, 43, 44) |

## I.  INTRODUCTION

On March 5, 2015, Defendant Lowe's Home Centers, LLC ("Lowe's") filed the three motions for protective order presently before the court. (*See* Docs. 42; 43; 44.) Defendant Lowe's seeks (1) a protective order precluding disclosure of confidential policies, procedures, and trade secrets, (2) a protective order precluding disclosure of settlement communications, and (3) a protective order precluding depositions of its corporate employees. (Docs. 42; 43; 44.) Defendant Samsung Electronics America, Inc. ("Samsung") initially filed statements of non-opposition and has since joined in Defendant Lowe's motions for protective order. (*See* Docs. 45; 46; 47; 56; 57; 58.) Plaintiffs Gary and Elena Granger (collectively "Plaintiffs") oppose all three motions for protective order. (*See* Docs. 48; 49; 50.)  The motions were submitted upon the record without

oral argument pursuant to Local Rule 230(g). On review of the motions and the documents filed in support and opposition, and good cause appearing therefor, Defendants Lowe's motions are denied without prejudice.

## II. FACTUAL BACKGROUND

This case arises from alleged incidents involving Samsung and Whirlpool washing machines on January 12 and March 21, 2013, at Plaintiffs' residence in Sonora, California. Plaintiffs allege they incurred economic and non-economic damages as a result of these incidents, including loss of personal property, loss of real property, and bodily injuries. (*See* Doc. 11 (Second Amended Complaint, hereinafter "SAC").) Plaintiffs purchased a Samsung washer and dryer from the Lowe's store in Sonora, California, in March 2012. (SAC, ¶6.) Plaintiffs purchased an extended warranty on the appliances and contracted for Lowe's to install the washer and dryer in their home. (SAC, ¶6.) On or about January 12, 2013, the washing machine flooded Plaintiffs' home, Plaintiffs notified Defendant Lowe's, and a Lowe's representative informed Plaintiffs a service representative would be sent to their home on January 15, 2013. (SAC, ¶7.) When no representative came to their home, Plaintiffs contacted Lowe's and the service call was re-scheduled for January 18, 2013. (SAC, ¶7.) When no representative came to their home for the re-scheduled appointment, Plaintiffs contacted Lowe's and were referred to Samsung to get an assessment of the property damage claim. (SAC, ¶8.) On all three occasions, Lowe's repeatedly instructed Plaintiffs to take no remedial action in the house until Samsung could inspect the damage. (SAC, ¶7-8.)

On January 19, 2013, Plaintiffs contacted Lowe's and were informed that no record existed of appointments and were instructed to call again the following Monday. (SAC, ¶9.) On January 21, 2013, Plaintiffs again contacted Lowe's, and a service call was scheduled for January 28, 2013. (SAC, ¶9.) Plaintiffs then contacted Samsung's corporate office and were again instructed to take no remedial action in the house until Samsung could inspect the damage. (SAC, ¶10.)

On March 21, 2013, Samsung's managing agent sent a Chubb Insurance investigator and Titan Environmental Solutions environmental investigator to Plaintiffs' home to test and report findings. (SAC, ¶11.) Plaintiffs requested and were promised a copy of the environmental

investigator's report. (SAC, ¶11.) Subsequently, Samsung's managing agent repeatedly refused to communicate with Plaintiffs regarding the results of the testing and failed to provide Plaintiffs with a copy of the environmental investigator's report despite repeated requests. (SAC, ¶12.) Eventually, in August of 2013, Plaintiffs learned that as a result of the flooding substantial quantities of toxic mold had been found throughout Plaintiffs' house. (SAC, ¶12.)

On March 21, 2013, a Lowe's representative agreed to provide Plaintiffs with a "loaner" washing machine, which was delivered and installed by Lowe's at Plaintiffs' home. (SAC, ¶13.) The loaner washing machine was not properly installed, and the first time Plaintiffs attempted to use it, their home was again flooded. (SAC, ¶13.)

In May of 2013, Plaintiff Gary Granger had abdominal surgery and, lacking the information contained in the environmental investigator's report regarding the presence of toxic mold in his home as a result of the flooding, he returned home to recover from the surgery. (SAC, ¶15.) Plaintiffs allege that inhaling the toxic mold in their home caused Plaintiff Gary Granger to suffer incessant coughing and sneezing, ultimately rupturing his wound and requiring emergency surgery. (SAC, ¶15.) Once Plaintiffs were aware of the toxic mold problems in their house, they moved out of the home into a travel trailer delivered to their property by Lowe's. (SAC, ¶17.) Plaintiff Gary Granger began exhibiting further medical issues after moving into the trailer, and it was discovered that the trailer had mold issues as well. (SAC, ¶18.) In early September 2013, a second travel trailer was provided to Plaintiffs. (SAC, ¶18.) In addition to causing ongoing medical problems for both Plaintiffs due to exposure to the toxic mold in their home and in the first travel trailer and the ongoing costs to their property and medical bills, Plaintiffs allege their dog died from a mold-related illness. (SAC, ¶19.)

### III. LEGAL STANDARDS

The scope of discovery under Federal Rule of Civil Procedure 26(b) is broad: "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). "Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* Relevance "has been construed broadly to encompass any matter that bears on, or that reasonably

could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (citing *Hickman v. Taylor*, 329 U.S. 495, 501, 67 S.Ct. 385, 91 L.Ed. 451 (1947)).

However, under Rule 26(c)(1), the court may, for good cause, issue an order to protect a party from "annoyance, embarrassment, oppression, or undue expense or burden, including . . . that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a designated way" Fed. R. Civ. P. 26(c). Under Rule 26(c), "the party asserting good cause bears the burden, for each particular document it seeks to protect, of showing that specific prejudice or harm will result if no protective order is granted." *Foltz v. State Farm Mut. Aut. Ins. Co.*, 331 F.3d 1122, 1130 (9th Cir. 2003). "Where a business is the party seeking protection, it will have to show that disclosure would cause significant harm to its competitive and financial position. That showing requires specific demonstrations of fact, supported where possible by affidavits and concrete examples, rather than broad, conclusory allegations of harm." *Contratto v. Ethicon, Inc.*, 227 F.R.D. 304, 307 (N.D. Cal. 2005) (citation omitted); *see also Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992) (citation omitted). The court is vested with broad discretion to permit or deny discovery. *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002).

## IV.   DISCUSSION

### A.   PROCEDURAL BACKGROUND

This action was filed by Plaintiffs in the Superior Court for the County of Tuolomne on June 19, 2014, against Defendants Lowe's and Samsung. (*See* Doc. 1.) The action was removed to federal court by Defendant Lowe's on August 1, 2014. (Doc. 1.) The operative complaint is the SAC, filed on August 26, 2014, which includes claims for negligence, strict liability, breaches of express and implied warranty, and negligent infliction of emotional distress. (*See* Doc. 11.) Defendants filed their answers on October 17, 2014, summarily denying the allegations of the SAC. (*See* Docs. 27; 28.)

On January 21 and 29, 2015, counsel for Defendant Lowe's met and conferred with Plaintiffs' counsel over telephone and via email regarding a possible stipulation not to disclose

any of Lowe's policies, procedures, or trade secrets produced in discovery (*see* Doc. 44, p. 4), as well as a possible stipulation not to disclose or disseminate any settlement communications between Plaintiffs and Defendant Lowe's (*See* Doc. 43, p. 5) and not to depose any of Defendant Lowe's corporate employees[1] (*see* Doc. 42, p. 5).

While Plaintiffs' counsel had agreed to the initial limits of a protective order over policies, procedures, and trade secrets, when Plaintiffs; counsel received the Stipulated Protective Order prepared by Lowe's, "the scope of the order was greatly expanded" to also include "personnel records, including disciplinary records, identity, information relating to the processes, operations, type of work, or apparatus, or the production, sales, shipments, transfers, identification of customers, inventories, amount or source of income, profit, losses, expenditures or any research, development, or any other commercial information supplied by Lowe's." (*See* Doc. 49, p. 2.)  On January 29, 2015, Plaintiffs' counsel informed Defendant Lowe's counsel that they would not sign the expanded stipulation, and Defendant Lowe's moved forward with filing its Motions for Protective Order.  (*See* Doc. 49, p. 2.)

On March 5, 2015, Defendant Lowe's filed the three motions for protective order presently before the court.  (*See* Docs. 42; 43; 44.)  Defendant Lowe's seeks (1) a protective order precluding disclosure of confidential policies, procedures, and trade secrets, (2) a protective order precluding disclosure of settlement communications, and (3) a protective order precluding depositions of its corporate employees. (Docs. 42; 43; 44.)  On April 1, 2015, Defendant Samsung filed its Statements of Non-Opposition to the three motions for protective order (Docs. 45; 46; 47), and on April 22, 2015, Defendant Samsung filed its Joinders to the three motions for protective order (Docs. 56; 57; 58).  On April 14, 2015, Plaintiffs filed their Oppositions to the three motions for protective order, contending that Defendant Lowe's failed to sufficiently exhaust efforts to agree on a stipulated discovery protective order prior to filing the instant motions, and that

---

[1] There is some confusion in Defendant Lowe's moving papers as to whether the employees Defendant Lowe's seeks to protect from being deposed are in fact employed by Defendant Lowe's Home Centers, LLC, or are employed by non-party Lowe's Companies, Inc.  Ann Swaim, a claims examiner employed by Lowe's Companies, Inc., and assigned to Plaintiffs' claim, is the only corporate employee mentioned by name in Defendant Lowe's motions.  A plain reading of Defendant Lowe's moving papers indicates that only "corporate employees" employed by non-party Lowe's Companies, Inc., would be the subject of Defendant Lowe's Motion for Protective Order Precluding Depositions of Its Corporate Employees.  (*See* Docs. 42; 60.)

5

Defendant Lowe's has further failed to demonstrate good cause why any of the three motions should be granted. (Docs. 48; 49; 50.) Defendant Lowe's filed its replies to Plaintiffs' Oppositions on April 22, 2015, arguing that the requested protective orders should be granted "because Federal Rule of Evidence 403 applies to this case." (Docs. 58; 59; 60.)

B.     **CONFIDENTIAL POLICIES, PROCEDURES, AND TRADE SECRETS**

The court finds that Defendant Lowe's has not shown good cause for why the full scope of documents identified in its Proposed Protective Order Precluding Disclosure of Confidential Policies, Procedures, and Trade Secrets should be included in its protective order. Defendant Lowe's argues in general terms that such "confidential policies, procedures, and trade secrets" should be included in the protective order because "Lowe's derives economic value from maintaining the secrecy of its confidential documents" and "[i]f disclosed to the public, the trade secret information would reveal [Lowe's] internal operations and could potentially be used by competitors as a means to compete for its customers, interfere with its business plans, and gain unfair business advantages." (Doc. 44, p. 6.)

Defendant Lowe's first seeks a blanket protective order designating as "confidential" Defendant Lowe's personnel records, trade secrets, customer information, and other confidential commercial information. (Doc. 44, p. 7.) Notably, Plaintiffs represent that they were willing to stipulate to a protective order covering Defendant Lowe's confidential policies and procedures, and that they only object to the expanded scope of the proposed order, which includes all of Defendant Lowe's business operations, including personnel information that is necessary to Plaintiffs' case. (Doc. 49, pp. 2-3.)

As a general matter, the party seeking a protective order must make a clear showing of a particular and specific need for the order. *Blakenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975). "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning do not satisfy the Rule 26(c) test." *Foltz*, 331 F.3d at 1130. "For good cause to exist, the party seeking protection bears the burden of showing specific prejudice or harm will result if no protective order is granted." *Keith H. v. Long Beach Unified Sch. Dist.*, 228 F.R.D. 652, 659 (C.D. Cal. 2005) (quoting *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206,

1210-11 (9th Cir. 2002)). As Plaintiffs point out, Defendant Lowe's has not stated with specificity the harm that disclosure of the documents identified in its motion will cause to its competitive and financial position. (Doc. 49, p. 3.) Within the numerous types of documents Defendant Lowe's has identified as needing protection, there are most likely many documents that should be protected from disclosure; however, Defendant Lowe's has not identified with specificity the documents it seeks to protect, nor articulated sufficient reasons to justify an order conferring blanket protection on such documents. Particularly, with regard to employees' identifying information and records, which Plaintiffs argue are relevant and necessary to their case, Defendant Lowe's mentioned in passing some concern about protecting its employees "from theft and other crimes." (Doc. 44, p. 6.) This reasoning is speculative at best.

Accordingly, the Court finds that Defendant Lowe's has failed to meet its burden of showing good cause to justify a blanket protective order regarding documents identified in its Motion for Protective Order Precluding Disclosure of Confidential Policies, Procedures, and Trade Secrets. To the extent Defendant Lowe's wishes to obtain or the parties wish to stipulate to a protective order concerning specific documents, they may do so, but must satisfy the standards set forth above. The Court recognizes Defendant Lowe's concern for its employees' privacy, however, and notwithstanding the denial of Defendant Lowe's motion, the Court imposes the following limitation on disclosure of documents and information relating to Defendant Lowe's personnel records: to the extent Defendant Lowe's produces documents containing or relating to its employees' personnel records in response to Plaintiffs' or Samsung's discovery requests, the parties are hereby ORDERED not to disclose or use such documents beyond the context of the present litigation.[2]

C.   **ALLEGED SETTLEMENT COMMUNICATIONS**

The court finds that Defendant Lowe's has not shown good cause for why all alleged "settlement communications" between Plaintiffs and Lowe's Claims Examiner Ann Swaim should be precluded from disclosure. Defendant Lowe's identifies "over 600 pages of documents"

---

[2] To the extent the parties find they must file employee records on the publicly accessible docket, for example in support of a motion for summary judgment, the parties shall redact any sensitive personal identifying information, including Social Security numbers and private medical information.

produced by Plaintiff Gary Granger at his deposition on January 6, 2015, and "notes of [Plaintiffs'] phone calls with Ms. Swaim" as "settlement communications" protected from disclosure under Fed. R. Evid. Rules 402 and 408. (Doc. 43, p. 6.) Defendant Lowe's argues that the public policy behind Rule 408, which governs the admissibility of settlement documents, cautions against disclosure due to the "catastrophic," "negative[,] and lasting effect on future settlements and the court system" that such disclosure would create. (Doc. 43, p. 7.) Defendant Lowe's characterizes *all* communications between Plaintiffs and Ms. Swaim as "settlement communcations" and "work product" prepared in anticipation of litigation. (Doc. 43, pp. 6-8.) Defendant Lowe's expresses concern specifically with the risk of disclosing "specific offered settlement terms" which would create a "'track record' of potential settlement figures . . . adversely affect[ing] Lowe's ability to negotiate future settlements." (Doc. 43, p. 10.)

Plaintiffs dispute the contention that all discussions between Plaintiffs and Ms. Swaim were settlement negotiations or communications prepared solely in an effort to gather information in anticipation of litigation. (Doc. 40, pp. 2-3.) Plaintiffs also note that in their Initial Disclosures, both Defendants identified Plaintiffs' handwritten notes of email and telephone conversations between Plaintiffs and both Defendant Lowe's and Lowe's Companies, Inc., employees, including Ms. Swaim. (Doc. 50, p. 4.) Plaintiffs argue that Defendant Lowe's "cannot reasonably expect to preserve confidentiality of [alleged] work product while simultaneously disclosing substantive components of that document." (Doc. 50, p. 5 (citing *Kintera Inc. v. Convio Inc.*, 219 F.R.D. 503 (S.D. Cal. 2003)).)

Discovery of any relevant, non-privileged information is generally permissible. Fed. R. Civ. P. 26(b)(1). The information need not be admissible if it is reasonably calculated to lead to admissible evidence. *Id.* The burden of proof is on the party seeking a protective order to make a clear showing of a particular and specific need for the order. *Blakenship*, 519 F.2d at 429. While any confidential settlement communications are undoubtedly inadmissible at trial to prove liability or the amount of Plaintiffs' claim, such communications may be admissible for other purposes, such as disputing a claim of undue delay. *See* Fed. R. Evid. Rule 408. Contrary to Defendant Lowe's representation in its motion (Doc. 43, p. 6), Rule 408 governs admissibility rather than

discoverability (Doc. 50, p. 3).  Further, Plaintiffs agree that "evidence of settlement negotiations may not be admissible at trial" and do not dispute that such documents would fall under Rule 408. (Doc. 50, p. 4.)  However, the issue before the Court is the discoverability of such documents, not their admissibility at trial.

Defendant Lowe's contends that the communications between Plaintiffs and Ms. Swaim are also protected from disclosure as confidential settlement communications and as work product. (Docs. 43; 59.)  Defendant Lowe's also relies on *Tanner v. Johnston*, No. 2:11-cv-28-TS, 2013 U.S. Dist. LEXIS 3512 (D. Utah July 17, 2013), for the position that "confidential information is discoverable if the party seeking the evidence can show that the information 'is relevant and reasonably calculated to lead to the discovery of admissible evidence'" and a "detailed analysis" is required to demonstrate that the privileged evidence is discoverable."  (Doc. 59, pp. 2-3.) However, that case is distinguishable and inapposite because in that case, the defendant sought discovery of a confidential settlement agreement between the plaintiff and another co-defendant to support apportionment of liability.  *See Tanner*, *supra*.  Plaintiffs are not seeking disclosure of a confidential settlement *agreement*, much less the disclosure of the terms of a settlement executed between Defendant Lowe's and another business or private individual.  Defendant Lowe's conclusion that Plaintiffs "cannot show that settlement communications from Lowe's [Companies, Inc.,] are relevant and admissible" under "the *Tanner* test" (Doc. 59, p. 3) does not fulfill Defendant Lowe's burden of demonstrating that *all* of the communications between Ms. Swaim and Plaintiffs are protected from disclosure.

Defendant Lowe's also contends that all communications between Plaintiffs and Ms. Swaim are protected as work product prepared in anticipation of litigation.  (Doc. 43, p. 8.) Plaintiffs respond that the communications between Plaintiffs and Ms. Swaim were prepared in the ordinary course of business and do not fall under the work product rule, because they would have been created regardless of any threat of litigation. (Doc. 50, pp. 6-7 (citing *In re Fischel*, 557 F.2d 209, 213 (9th Cir. 1977)).)  "While litigation need not be imminent, the primary motivating purpose behind the creation of a document or investigative report must be to aid in possible future litigation."  *Janicker by Janicker v. George Washington Univ.*, 94 F.R.D. 648, 650 (D.D.C. 1982).

9

As described by the parties, Ms. Swaim's investigation of the facts and communications with the Plaintiffs over the course of seven months was not clearly "in furtherance of a sufficiently identifiable resolve to litigate, rather than a more or less routine investigation of a possibly resistable claim[.]"  *See Fine v. Bellefonte Underwriters Incs. Co.*, 91 F.R.D. 420, 422-23 (S.D.N.Y. 1981).

Here, all communications were between Plaintiffs and Ms. Swaim, a Claim Examiner employed by Lowe's Companies, Inc., who is apparently tasked with resolving any claims filed by Defendant Lowe's customers.  Neither party has represented that Ms. Swaim was involved with a legal investigation of liability, or that Plaintiffs seek any internal memoranda or communications resolving legal questions of liability or damages between or among Defendants and their counsel. (*See* Doc. 50, p. 7 ("the information Lowe's is claiming is work product is communication *between* Ann Swaim and Plaintiffs.  These communications were not internal communications").) Plaintiffs provided a detailed description of the contents of the communications between Ms. Swaim and the Plaintiffs over seven months:

> . . . the "emails between Ann Swaim and Plaintiffs contain much more than settlement negotiations.  There were a minimum of 227 emails and 40 telephone conversations (which have been transcribed by Plaintiffs) between Plaintiffs and Ann Swaim.  Ann Swaim worked with Plaintiffs for approximately seven (7) months on the issues raised by Plaintiffs in their Complaint.  Ann Swaim assumed many responsibilities including, but not limited to, working on behalf of Samsung on this matter, dealing with agents and independent contracted hired by both Lowe's Home Companies, Inc.[,] and Samsung to deal with Plaintiffs' complaints, reporting to Plaintiffs on Ms. Swaim's dealings with Samsung, reporting to Plaintiffs on Ms. Swaim's dealings with agents and independent contractors hired by Lowe's Companies, Inc[,] and Samsung to deal with Plaintiffs' complaints, setting values of Plaintiffs' property, making representations to Plaintiffs and instructing Plaintiffs[ ] that specific personal items of Plaintiffs' could be destroyed.

(Doc. 40, pp. 2-3.)  Though Defendant Lowe's concluded that "any settlement communications between the parties is irrelevant" (Doc. 43, p. 6), it has not actually provided any argument as to *how* "over 600 pages of documents" and "notes of phone calls" between Plaintiffs and the Claim Examiner handling their case over the course of seven months are "irrelevant" to Plaintiffs' claims and how every single document and note constitutes protected work product or constitutes a

10

confidential settlement communication.

A demonstration of good cause is necessary to preclude the disclosure of confidential settlement agreements in this Circuit. *See Phillips ex rel. Estates*, 307 F.3d at 1212. However, in this case, no actual confidential settlement agreement was executed between or among the parties. Defendant Lowe's conclusion that all documents relating to its "pre-litigation claim handling, remediation and settlement efforts" should be protected from disclosure (Doc. 59, p. 2) is not sufficient to warrant a blanket protective order over *all* communications between Plaintiffs and Ms. Swaim, including those that clearly do not communicate a settlement offer or terms and do not include any sort of offer-counteroffer negotiations. (*See, e.g.,* Doc. 61, p. 4-5 (emails between Ann Swaim and Plaintiffs updating them on the status of their claim and advising them that hotel and animal lodging expenses would be reimbursed).) Defendant Lowe's final argument that disclosure of these communications to Plaintiffs during discovery is precluded under Fed. R. Evid. Rule 403 is also unpersuasive, as again, the issue before the Court is discoverability, *not* admissibility.

The Court recognizes Defendant Lowe's concern for the protection of actual settlement offers and negotiations. The Court offers no ruling to the extent Defendant Lowe's wishes to obtain or the parties wish to stipulate to a protective order concerning specific documents containing settlement negotiations, terms, or offers as such documents may be properly the subject of a protective order.[3] Accordingly, the Court finds that Defendant Lowe's has failed to meet its burden of showing good cause to justify a blanket protective order regarding the communications between Claims Examiner Ann Swaim and the Plaintiffs identified in its Motion for Protective Order Precluding Disclosure of Settlement Communications.

D.     **DEPOSITIONS OF CORPORATE EMPLOYEES**

The court finds that Defendant Lowe's has not shown good cause for why Plaintiffs must be precluded from "the deposition of any [of] Lowe's corporate employees." Defendant Lowe's argues that

---

[3] The Court also notes that public disclosure of any communications between Ms. Swaim and Plaintiffs could be limited pursuant to good cause and agreement by the parties; however, that is not the request currently before the Court.

11

> . . . Neither Ms. Swaim nor any other Lowe's corporate employee has personal knowledge of the washing machines that allegedly caused damage at Plaintiffs' residence or of their hookup.  The washing machines were sold and/or hooked up by Lowe's store-level employees, whom Plaintiffs can depose.  Thus, the deposition of any Lowe's corporate employee will not lead to the discovery of admissible evidence and should be barred[.]"

(Doc. 42, 2.)  Despite broadly requesting that the depositions of all "corporate employees" be precluded under the blanket terms of the Motion for Protective Order, Defendant Lowe's only presents specific argument regarding Claims Examiner Ms. Swaim, an employee of Lowe's Companies, Inc., who acted "merely [as] a conduit between Lowe's and its customers regarding their claims." (Doc. 42, p. 7.)  Defendant Lowe's contends that Plaintiffs are welcome to depose Defendant Lowe's person most knowledgeable or store-level employees or have any emails or correspondence from Ms. Swaim authenticated via requests for admission, but should be precluded from deposing Ms. Swaim herself because she "only knows the 'facts' of the case as told to her by Plaintiffs" and therefore she lacks any personal knowledge about the substance of the claims alleged in the Complaint. (Doc. 42, p. 7.)

Defendant Lowe's also argues that Ms. Swaim's deposition would be unduly burdensome and duplicative since Plaintiffs already possess extensive documentation of their email communications and notes of their phone conversations with Ms. Swaim.  Finally, Defendant Lowe's restates its arguments that Plaintiffs should be precluded from taking Ms. Swaim's deposition because her communications with Plaintiffs are protected from disclosure as confidential settlement communications and as work product prepared in anticipation of litigation. (Doc. 42, pp. 10-11.)

Plaintiffs argue in opposition that Defendant Lowe's "motion purposely misstates the facts of this case" – the Complaint "involves much more than just a strict liability claim and a claim for faulty installation.  Plaintiffs also allege causes of action for negligence and negligent infliction of emotional distress against Lowe's and its agents in prohibiting Plaintiffs from taking any action after the flood in their home and for failing to remediate the damage for weeks after the flood, thereby causing the growth of toxic mold throughout Plaintiffs' home." (Doc. 48, p. 3.)

//

Plaintiffs further argue that Ms. Swaim's deposition is highly relevant and probative to their case. Whatever Ms. Swaim's actual duties are, during the seven months she handled Plaintiffs' claim she "was more than merely a 'conduit between Lowe's and its customers regarding their claims,' . . . and she certainly has knowledge of Plaintiffs' claim and her testimony without doubt would lead to the discovery of admissible evidence." (Doc. 48, p. 4.) Plaintiffs note that they were referred to Ms. Swaim by Defendant Lowe's employees for the handling of their claim, and the deposition of store employees, repair people, delivery people, or installers is not an acceptable substitute for the deposition of the employee charged with handling their claim. (Doc. 48, 4-5.) Further, Ms. Swaim was Plaintiffs' contact regarding the mold report that they were allegedly unable to obtain for several months, during which time they allege they were exposed to toxic mold, and Ms. Swaim hired and was in charge of directing ServPro to do remediation work at Plaintiffs' home. (Doc. 48, p. 5.) Plaintiffs finally argue that their possession of copies of the emails and handwritten notes transcribing the contents of conversations they had with Ms. Swaim does not render Ms. Swaim's deposition testimony duplicative, cumulative, or irrelevant.

As discussed above, Defendant Lowe's has not carried its burden to demonstrate that all of Ms. Swaim's communications with Plaintiffs are confidential settlement communications or are protected work product. Ms. Swaim was the primary handler of Plaintiffs' claim for the washer incidents at their home, and over the course of seven months she and Plaintiffs engaged in hundreds of communications for purposes beyond settlement negotiations, terms, offers and counteroffers. Plaintiffs correctly note that their Complaint contains claims wider in scope than a strict product liability and property damage claim, and Ms. Swaim's testimony is of significant probative value to their claims for negligence and negligent inflictions of emotional distress due to the alleged failure or refusal to disclose to Plaintiffs the contents of the toxic mold report and her alleged instructions to Plaintiffs to take no remedial actions regarding the state of their property.

Defendant Lowe's is required to make a clear showing of a particular and specific need for the requested protective order. *Blakenship*, 519 F.2d at 429. While Defendant Lowe's alleged broadly that it will be "irreparably harmed if no protective order is granted" to preclude the

deposition of its "corporate employees," Defendant Lowe's did not specifically identify which employees should not be deposed or why anyone other than Ms. Swain should or should not be deposed. Further, Defendant Lowe's did not actually state what harm would be incurred by the deposition of Ms. Swaim, beyond a statement implying that her testimony regarding handling Plaintiffs' claims "would potentially discourage Lowe's and other corporations from entering into settlement negotiations for fear that they will be used against them" – a "result [that] would be catastrophic to the judicial system and would be contrary to public policy." (Doc. 42, p. 10.) This type of colorful language, "unsubstantiated by specific examples or articulated reasoning," does not demonstrate that specific prejudice or harm will result if no protective order is granted. *See Foltz*, 331 F.3d at 1130; *Keith H.*, 228 F.R.D. at 659. As Plaintiffs point out, Defendant Lowe's has not stated with specificity the harm that Ms. Swaim's deposition would actually cause. (Doc. 48, pp. 11-12.) Defendant Lowe's claim that the "corporate employees" based in North Carolina would be inconvenienced by the time required for their hypothetical depositions when such information might be obtained through other sources is not sufficient to meet the Rule 26(c) test. *See Contratto*, 227 F.R.D. at 307-08 (a business seeking protection is required to show "specific demonstrations of fact, supported where possible by affidavits and concrete examples, rather than broad, conclusory allegations of harm").

Accordingly, the Court finds that Defendant Lowe's has failed to meet its burden of showing good cause to justify a blanket protective order precluding depositions of its "corporate employees." To the extent Defendant Lowe's wishes to obtain or the parties wish to stipulate to a protective order concerning specific employees, they may do so, but must satisfy the standards set forth above.

## VI. CONCLUSION

In accordance with the foregoing, THE COURT HEREBY ORDERS that Defendant Lowe's Motions for Protective Order (Docs. 42; 43; 44), are DENIED without prejudice. Further, to the extent Defendant Lowe's produces documents containing or relating to its employees' personnel records in response to Plaintiffs' or Samsung's discovery requests, the parties are hereby ORDERED not to disclose or use such documents beyond the context of the present

litigation.

IT IS SO ORDERED.

Dated: **April 28, 2015**                               **/s/ Sheila K. Oberto**
                                                    UNITED STATES MAGISTRATE JUDGE