UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Gary M. Granger, et al.<br><br>Plaintiffs,<br><br>v.<br><br>Lowe's Home Centers, LLC, et al.,<br><br>Defendants. | No. 1:14-cv-01212-DAD-SKO<br><br>ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT<br><br>(Doc. No. 68) |

INTRODUCTION

This matter came before the court on March 15, 2016, for hearing on defendants' motions for partial summary judgment. Attorney William B. Barringer appeared on behalf of the plaintiffs and attorney Jeffrey G. Bairey appeared on behalf of the defendants.[1] Oral argument was heard and plaintiffs' motion was taken under submission. For the reasons set forth below, defendants' motion for partial summary judgment will be granted.

---

[1] The caption of this case indicates there are multiple defendants, particularly up to ten additional defendants captioned as "Does." As a general rule, the use of "Doe" defendants is not favored in federal court. *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980). However, plaintiffs "should be given an opportunity through discovery to identify the unknown defendants." *Id.* Plaintiffs here have identified no further defendants, and discovery in this action is now closed. Since "[t]he court has the authority to dismiss the Doe defendants *sua sponte*," *Urias v. Quiroz*, 895 Supp. 262, 264 (S.D. Cal. 1995), the court will do so here. Accordingly, the Doe defendants are hereby dismissed.

1

Gary Granger and Elena Granger ("plaintiffs") filed a complaint against Lowe's Home Centers, LLC and Samsung Electronics America, Inc. ("defendants") in the Tuolomne County Superior Court on or about June 19, 2014. On August 1, 2014, Lowe's filed a notice of removal on the basis of diversity jurisdiction, 28 U.S.C. § 1332. (Doc. No. 1.) Samsung joined the notice of removal on August 5, 2014. (Doc. No. 2.) On August 26, 2014, plaintiffs filed a second amended complaint—currently the operative complaint in this action—against defendants. (Doc. No. 11.) In it, plaintiffs allege as follows. They purchased a Samsung washer and dryer from Lowe's, that the washer and dryer malfunctioned, and, as a result, substantial flooding occurred inside their home. (Doc. No. 11, Complaint ("Compl.") at ¶¶ 6–7). The flooding—combined with defendants' dilatory efforts to remediate the damage—caused mold to grow throughout the house, forcing plaintiffs to evacuate their home and causing significant property damage, including the death of their dog. (*Id*. at ¶¶ 8–20.) The event also resulted in plaintiffs suffering serious illness and severe emotional distress. (*Id*. at ¶¶ 19–20.)

Plaintiffs' complaint contains five causes of action, including: (1) negligence, (2) strict liability, (3) breach of express warranty, (4) breach of implied warranty, and (5) negligent infliction of emotional distress ("NIED"). (*Id*. at ¶¶ 21–66.) On February 12, 2016, defendants filed a motion for partial summary judgment. (Doc. No. 68.) The motion focuses solely on plaintiffs' claim for NIED. Plaintiffs filed an opposition to the motion on February 19, 2016.[2] (Doc. Nos. 72, 73, 74.) Defendants filed a reply on March 8, 2016. (Doc. No. 75.)

**I.   Background**

---

[2] In their opposition, plaintiffs challenged defendants' motion for partial summary judgment on the grounds that it was not timely. Plaintiffs cited to Federal Rule of Civil Procedure 56(b), which requires all motions for summary judgment to be filed within "30 days after the close of discovery." However, Rule 56(b) begins with the following clause: "[u]nless a different time is set by local rule or the court orders otherwise . . . ." In this action, the court's scheduling order, filed on January 14, 2015 (Doc. No. 31), states that all dispositive motions must be heard no later than March 11, 2016. The scheduling order also provides that calendaring and civil motion procedures are controlled by Local Rule 230, which requires parties to file and serve a motion twenty-eight days prior to the hearing date. The conjunction of Local Rule 230 and the scheduling order issued in this case imposed a deadline for dispositive motions on February 12, 2016, the day on which defendants filed their motion for partial summary judgment. Thus, defendants' motion for partial summary judgment was timely filed.

Plaintiffs are homeowners who reside in Tuolumne County, California. (Compl. at ¶ 1.) As noted above, on March 12, 2012, they purchased a Samsung washer and dryer—along with an extended warranty—from Lowe's. (Doc. No. 74 at 9–10.) According to plaintiffs, they also contracted with Lowe's to have the company install the washer and dryer at their house. (Compl. at ¶ 6.) Approximately nine months later, on January 12, 2013, the washer and dryer malfunctioned, flooding their home. (*Id*. at ¶ 7.)

According to plaintiffs, at the time of the flooding, Gary Granger was out of the house playing golf. (Doc. No. 74 at 7.) Elena Granger was initially in the bedroom when the flooding started, but she also alleges that when she came downstairs she witnessed water flowing out of the appliance. (*Id*. at 27.) Plaintiffs allege that upon discovering the flooding, Elena Granger called Lowe's, *id*. at 29, and was told that a service representative would not be able to come out for five days, *id*. at 30. According to plaintiffs, Lowe's also told Elena Granger that "if [she] touch[ed] it, [she] own[ed] it." (*Id*. at 31.) Plaintiffs also informed Samsung of the damage, and it responded in a similar manner. (*Id*. at 41.) According to plaintiffs, an inspection did not occur until January 27, 2013. (*Id*. at 8.)

Defendants claim mold began growing in the house approximately two weeks after the flood. (Doc. No. 68-3 at 25.) Plaintiffs contest this assertion and claim the growth likely occurred much earlier, stating they noticed a musty smell throughout their home as soon as three days after the incident. (Doc. No. 74 at 12–13.) Plaintiffs also assert that carpet cleaners noticed mold spores two weeks after the flooding. (*Id*. at 11–12.) Nonetheless, plaintiffs remained in their home until mid-August 2013. (*Id*. at 14.) According to plaintiffs, their delay in moving out of the house was due to the failure of Titan Environmental Services—the company hired by defendants to test and report on the mold damage to plaintiffs' home—to provide them with a copy of its investigator's report. (*Id*. at 18, 22.) Plaintiffs allege Titan was allowed to perform the investigation on the sole condition that a copy of the report would be provided to them as soon as it was ready. (*Id*. at 22.) Plaintiffs allege they did not receive a copy of the report until July 16, 2013, *id*. at 18, which was well after it was provided to Samsung. Upon learning of the extent of the damage, plaintiffs moved to a trailer, provided to them by Lowe's. However,

plaintiffs subsequently discovered that this trailer had a mold infestation as well, and Lowe's provided them with a second trailer in September 2013.

/////

Plaintiffs also allege that between the flood and their settling into the mold-free trailer, two other incidents occurred. First, plaintiffs allege that on March 21, 2013, Lowe's provided them with a loaner washing machine. (*Id*. at 20–21.) Lowe's did not properly install that appliance, causing plaintiffs' house to flood for yet a second time. (*Id*.) Second, plaintiffs allege that on May 7, 2013, Gary Granger underwent abdominal surgery. Because of the mold, during his attempt to recuperate, Gary Ganger was beset with such violent coughing and sneezing fits his sutures ruptured, resulting in him being rushed to the hospital emergency room for re-suturing.

## II. Legal Standard

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

In summary judgment practice, the moving party "initially bears the burden of proving the absence of a genuine issue of material fact." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that the adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B). When the non-moving party bears the burden of proof at trial, "the moving party need only prove that there is an absence of evidence to support the nonmoving party's case." *Oracle Corp.*, 627 F.3d at 387 (citing *Celotex*, 477 U.S. at 325.). *See also* Fed. R. Civ. P. 56(c)(1)(B). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will

4

bear the burden of proof at trial.  *See Celotex*, 477 U.S. at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  *Id*.  In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment . . . is satisfied."  *Id*. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  *See* Fed. R. Civ. P. 56(c)(1); *Matsushita*, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the fact in contention is material, *i.e.*, a fact that might affect the outcome of the suit under the governing law, *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, *i.e.*, the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  *See Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."  *T.W. Elec. Serv.*, 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"  *Matsushita*, 475 U.S. at 587 (citations omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact," the court draws "all reasonable inferences supported by the evidence in favor of the non-moving party."  *Walls v. Central Costa County Transit Authority*, 653 F.3d 963, 966 (9th Cir. 2011).  It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985),

*aff'd*, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  *Matsushita*, 475 U.S. at 587 (citation omitted).

**III.    Analysis**

>    *a.    Emotional Distress Arising From Plaintiffs' Physical Injuries Cannot Support a Claim of NIED*

Federal courts sitting in diversity apply state substantive law and federal procedural law. *See Mason & Dixon Intermodal, Inc. v. Lapmaster Int'l LLC*, 632 F.3d 1056, 1060 (9th Cir. 2011) ("When a district court sits in diversity, or hears state law claims based on supplemental jurisdiction, the court applies state substantive law to the state law claims."); *Zamani v. Carnes,* 491 F.3d 990, 995 (9th Cir. 2007). When interpreting state law, a federal court is bound by the decisions of a state's highest court.  *Trishan Air, Inc. v. Fed. Ins. Co.*, 635 F.3d 422, 427 (9th Cir. 2011).  In the absence of a governing state decision, a federal court attempts to predict how the highest state court would decide the issue, using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance.  *Id*.

There is no independent tort of NIED under California law.  *Burgess v. Superior Court*, 2 Cal. 4th 1064, 1072 (1992) ("We have repeatedly recognized that '[t]he negligent causing of emotional distress is not an independent tort, but the tort of negligence.'" (quoting *Marlene F. v. Affiliated Psychiatric Medical Clinic, Inc.*, 48 Cal. 3d 583, 588 (1989))).  NIED is instead a subset of negligence that extends the ability to recover damages to indirect victims who, while not suffering physical injury as the result of a tortfeasor's acts, nonetheless suffer severe emotional distress.  *See, e.g., Dillon v. Legg*, 68 Cal. 2d 728, 747–48 (1968) (allowing mother to pursue damages for emotional trauma resulting from witnessing the death of her child).  However, when emotional distress accompanies physical injury, NIED is not the appropriate cause of action for seeking recovery of the resulting damages.  Rather, when a plaintiff is physically injured and suffers emotional distress as a result, damages stemming from the emotional distress are treated

6

as a "parasitic item" to be recovered through a claim of ordinary negligence. *Thing v. La Chusa*, 48 Cal. 3d 644, 651 (1989); *see also Summers v. Delta Airlines, Inc.*, 805 F. Supp. 2d 874, 887 (N.D. Cal. 2011) ("Under California law, it is well-settled that in ordinary negligence actions for physical injury, recovery for emotional distress caused by that injury is available as an item of parasitic damages.") (quotation omitted).

Here, plaintiffs claim that "as a direct and proximate result of [their] exposure to toxic mold resulting from the . . . conduct of [d]efendants, [they] became seriously ill and are now under doctors' care for injuries related to mold exposure." (Compl. at ¶19.)  Thus, to the extent that their emotional distress originates from their physical injuries, plaintiffs' NIED claim is subsumed by their general negligence claim.  *See Summers,* 805 F. Supp. 2d at 875–76 (dismissing plaintiff's NIED claim because it was "no more than a restatement of her . . . cause of action for negligence."); *see also Hernandez v. City of Oakland*, Case No. 14-cv-03079-JST, 2014 WL 5034756, at *5 (N.D. Cal. Oct. 8, 2014) ("[Plaintiff's] NIED cause of action duplicates his negligence cause of action and must be dismissed.")  Of course, it would appear clear that plaintiffs may still introduce at trial evidence of their emotional distress and attempt to recover damages for it through their first cause of action against defendants for ordinary negligence.

      b. *Plaintiffs Fail to Establish that They Are Entitled to Recover under the "Direct Victim" Theory of NIED*

Plaintiffs also appear to claim that they suffered emotional distress—separate and apart from their physical injuries—as a result of defendants' alleged dilatory efforts in remediating the water damage in question.  According to plaintiffs, this alleged failure on defendants' part resulted in them suffering substantial property damage and economic loss giving rise to emotional distress.  Plaintiffs contend that they are entitled to recover for this emotional distress under the "direct victim" theory of NIED.[3]

---

[3] In their opposition (Doc. No. 72), plaintiffs make clear that they are not claiming NIED under a bystander theory. *See Singh v. Bunch,* No.1:15-cv-00646-GEB-BAM, 2016 WL 80628, at *13 (E.D. Cal. Jan 7, 2016) ("The law of negligent infliction of emotional distress in California is typically analyzed . . . by reference to two 'theories' of recovery: the 'bystander' theory and the 'direct victim' theory.") (quoting *Burgess v. Superior Court*, 2 Cal. 4th 1064, 1071 (1992)).

Under the "direct victim" theory, a plaintiff may recover damages for serious emotional distress—absent a physical injury—if the distress results from "a breach of duty owed the plaintiff that is 'assumed by the defendant or imposed on the defendant as a matter of law, or that arises out of a relationship between the two.'" *Burgess*, 2 Cal. 4th at 1073 (quoting *Marlene F.*, 48 Cal. 3d at 590). Given the context of this case, at the outset, the question here is whether plaintiffs have established the existence of such a duty.

First, it must be noted that "'[n]o California case has allowed recovery for emotional distress arising solely out of property damage.'" *Erlich v. Menezes*, 21 Cal. 4th 543, 554 (1999) (quoting *Cooper v. Superior Court*, 153 Cal. App. 3d 1008, 1012 (1984)). *See also Robinson v. United States*, 175 F. Supp. 2d 1215, 1228 (denying recovery for NIED when plaintiffs could show damage only to property). As the California Supreme Court has stated, "a breach of duty [giving rise to an NIED claim] must threaten physical injury, not simply damage to property or financial interests." *Potter v. Firestone Tire and Rubber Co.*, 6 Cal. 4th 965, 985 (1993). Here, plaintiffs have come forward with no evidence on summary judgment showing that they experienced emotional distress as a result of a perceived threat of physical injury. In their complaint, in their opposition to the pending motion for summary judgment and in their declarations and exhibits accompanying their opposition, plaintiffs state that they suffered emotional distress from three sources: (1) their physical illness, which as described above, is a type of parasitic damage not capable of supporting an independent NIED claim; (2) the damage to their property, including their house and their dog; and (3) the medical bills they incurred as a result of their medical treatment for mold exposure. However, California case law clearly states that a plaintiff cannot recover for emotional distress arising from property damage and/or economic loss alone. *Id*.

Second, the court finds plaintiffs' argument that defendants had a duty of care concerning plaintiffs' emotional wellbeing to be unavailing. *See Robinson*, 175 F. Supp. 2d at 1227 (noting that in deciding whether a plaintiff can bring an NIED claim, a court must ask "whether the [defendant] owes a duty to the [p]laintiffs, what is the source of that duty, and does that duty support the award of emotional distress damages.") In their opposition to the pending motion,

plaintiffs appear to claim that such a duty arose as a result of the manufacturer/purchaser relationship that existed between the parties. Alternatively, plaintiffs hint that defendants may have assumed a duty to remediate the damages. Neither of these arguments is persuasive.

It is true that California courts have held, in certain circumstances, that the manufacturer-consumer relationship can form the basis for an NIED claim. *See Gu v. BMW of North America, LLC*, 132 Cal. App. 4th 195, 206 (2005) (noting that "[a] manufacturer/seller of a product is under a duty to exercise reasonable care in its design so that it can be safely used as intended by its buyer/consumer."); *see also Kately v. Wilkinson*, 148 Cal. App. 3d 576, 588 (1983) (noting that "[i]t is clearly predictable that the user of a defective product will feel guilt and responsibility for the injury or death of another notwithstanding that the actual cause was the malfunction of the product he was using."). However, given the unique circumstances present and relied upon by the courts in *Gu* and *Kately*, it is clear that those cases are factually distinguishable and that plaintiffs cannot rely on this relationship to establish an NIED claim here.

In *Kately*, the operator (and purchaser) of a boat and her daughter sued the manufacturer for NIED when a defect in the boat's steering mechanism resulted in the death of a family friend. *Kately*, 148 Cal. App. 3d at 580–81. The court analyzed whether either plaintiff could recover under the "direct victim" theory, deciding that the operator of the boat could pursue such a claim. The court observed that the defendants "should reasonably have foreseen that [the operator], as the purchaser and an operator of a defective boat, would suffer emotional distress when the boat malfunctioned and killed or injured another human being." *Id*. at 587–88 (emphasis added). The court further noted that

> [t]he user of a defective product is not a mere bystander but a primary and direct victim of the product defect; this is true whether the defective product directly and immediately injures the user or severely harms another while being operated by the user; it is equally true whether the user suffers physical or emotional injuries.

*Id*. at 588. In contrast, the court also noted that the operator's daughter, who was only a passenger, could not mount a similar claim. *Id*. This was because "[a] mere passenger in any defective vehicle or craft is not a user who would foreseeably suffer emotional injuries, as

9

discussed above, when the product defect causes severe injury or death to a third party." *Id*.

Similarly, in *Gu*, the owner of a car sued its manufacturer after her sister was killed in a traffic accident. 132 Cal.App.4th at 199. At the time of the accident, the sister was driving the car, and the plaintiff/owner was not present. *Id*. The owner sought recovery as a "direct victim," alleging the manufacturer's duty arose either from a special relationship or from a duty imposed by law. The owner argued the manufacturer "owed [her] a duty not to cause her foreseeable emotional distress by selling her a negligently-designed car that (contrary to [the manufacturer's] representations) was not safe . . . ." *Id*. at 206. The court first noted that a manufacturer does have a duty "to exercise reasonable care in its design so that [the product] can be safely used as intended . . . ." *Id*. (quoting *Williams v. Beechnut Nutrition Corp.*, 185 Cal. App. 3d 135, 141 (1986)). But, the court rejected the owner's special relationship argument because the owner was not using the car at the time of the accident in question. *Id*. at 206. Moreover, the court held that the purchase agreement with the dealership that sold the car to the owner could not be used as the basis for a special relationship argument because "the mental and emotional well-being" of the owner was not "the express object of the contract . . . ." *Id*. at 207. Lastly, the court distinguished the holding in *Kately* by noting that the defendants in that case owed the plaintiff a duty of care because "the plaintiff product owner was using the defective boat as intended at the time of the injury-producing event." *Id*. at 210.

These decisions by California courts limit the manufacturer/purchaser relationship as the basis for an NIED claim to instances when the use of the product by the plaintiff results in a contemporaneous, severe injury to a third party. This is simply not the case here. Elena Granger used the washing machine in question and witnessed the device malfunction, but Elena Granger's use of the device—and its subsequent malfunction—did not result in a contemporaneous, severe injury-producing event.

Under California law a NIED claim can also be based, in some instances, on a breach of an assumed duty. But this is the case only if "emotional concerns are the essence" of the assumed duty. *Erlich*, 21 Cal. 4th at 559. For example, in *Christensen v. Superior Court*, the plaintiffs sued mortuaries and crematoria for mistreatment of decedents' remains. 54 Cal. 3d 868, 876–80.

The plaintiffs claimed, and the defendants did not dispute, that mishandling human remains was likely to cause serious emotional distress to the decedents' survivors; thus, the court held that the plaintiffs could seek damages for the emotional distress resulting from the negligent handling of their loved ones' remains. *Id*. at 890–91. In *Burgess*, the California Supreme Court held that emotional concerns underpin the relationship between a mother and the obstetrician delivering her baby. 2 Cal. 4th at 1076. The court noted that "[a]n obstetrician . . . surely recognizes the emotionally charged nature of pregnancy and childbirth and the concern of the pregnant woman for her future child's well-being." *Id*. Thus, obstetricians owe mothers a direct duty to avoid inflicting emotional distress through the negligent delivery of that mother's child. *Id*. at 1076–77. As the California Supreme Court has noted, these examples indicate that "[c]ases permitting recovery for emotional distress typically involve mental anguish stemming from more personal undertakings the traumatic results of which were unavoidable." *Erlich*, 21 Cal. 4th at 559.

Here, plaintiffs do not provide any facts or evidence showing "the defendant[s] assumed a duty to [plaintiffs] in which the emotional condition of [plaintiffs] [wa]s an object[.]" *Potter*, 6 Cal. 4th at 987. Rather, plaintiffs' evidence establishes the following: Elena Granger witnessed the flooding; Elena Granger immediately contacted Lowe's, which in turn, told Elena Granger to not take any remedial action until it could review the damage; Lowe's repeatedly failed to send out a representative, despite multiple attempts by the plaintiffs to schedule an inspection; a carpet cleaner informed plaintiffs of the likely presence of mold during the last week in January 2013; Gary Granger contacted Samsung, which informed him to not take any remedial action until it could send out a representative; plaintiffs noticed a musty smell three days after the flood; an inspection did not occur until January 27, 2013; Lowe's provided plaintiffs with a loaner washing machine, which caused subsequent flooding as a result of it not being properly installed; plaintiffs allowed for an environmental inspection service company—hired by Samsung and its insurer—to test their home on the condition that they be provided with a report; and remediation of the water damage did not occur until August 2013. This is a litany of facts which may well support a claim that defendants assumed a duty to exercise reasonable care in remediating the damage to plaintiffs' property, but none of these facts show that plaintiffs' emotional well-being was ever

/////

/////

/////

the object of that duty. Accordingly, plaintiffs' attempt to proceed on an independent NIED claim in this action fails as a matter of law.[4]

**IV.   Conclusion**

For all of the reasons stated above:

(1)  the court GRANTS defendants' motion for partial summary judgment (Doc. No. 68), as to plaintiffs' fifth cause of action for negligent infliction of emotional distress; and

(2)  Plaintiffs' fifth cause of action for negligent infliction of emotional distress is DISMISSED.

IT IS SO ORDERED.

Dated: **March 22, 2016**                              _____
                                                                        UNITED STATES DISTRICT JUDGE

---

[4] As mentioned above, this court notes the dismissal of plaintiffs' fifth cause of action for NIED does not in any way impede their ability to pursue damages for emotional distress under their first cause of action for negligence. Additionally, this holding does not in any way hinder plaintiffs from presenting the evidence necessary to establish the existence of such damages.